UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

EDDIE TARAFA,                          :

                    Petitioner,    :    10 Civ. 3870 (AJN)(HBP)

     -against-                     :    REPORT AND
                                        RECOMMENDATION
DALE ARTUS,                            :

                    Respondent.    :

----------------------------------X


          PITMAN, United States Magistrate Judge:


          TO THE HONORABLE ALISON J. NATHAN, United States

District Judge,


I.  Introduction


          Petitioner Eddie Tarafa seeks, by his pro se petition

for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, an

Order vacating the judgment of conviction entered against him by

the Supreme Court of the State of New York, Bronx County

(Iacovetta, J.) for one count of murder in the second degree in

violation of New York Penal Law § 125.25.  Petitioner is cur-

rently incarcerated pursuant to that judgment and is serving an

indeterminate term of twenty years to life.

          Respondent moves to dismiss the petition on the grounds

that is untimely and procedurally barred.  For the reasons set

forth below, I respectfully recommend that respondent's motion be granted and that the petition be dismissed as time-barred.

II.  Background

    A.  Facts

        On December 12, 2003, petitioner pled guilty to one count of murder in the second degree in violation of New York Penal Law § 125.25 (Affidavit of Assistant District Attorney Robert R. Sandusky, III, Esq., sworn to April 19, 2012 (Docket Item 32) ("Sandusky Aff.") ¶ 4).  Petitioner pled guilty pursuant to a cooperation agreement that provided, in pertinent part, that if the prosecution was satisfied with his cooperation, petitioner would be permitted to withdraw his plea to the murder count, and plead instead to a single manslaughter count (Petition for Writ of Habeas Corpus, filed May 11, 2010 (Docket Item 2) ("Pet."), Ex. 1).[1]  The cooperation agreement further provided that "It is further understood that Eddie Tarafa will waive his right to appeal his conviction, including the length of any incarceratory sentence imposed" (Pet., Ex. 1).  At his plea allocution, peti-

---

[1]The cooperation agreement included with the petition is only a draft agreement because the signed agreement was part of the sealed state court file (Pet., Ex. 3, letter dated February 4, 2008 from Howard S. Jaffe, Esq. to Eddie Tarafa).

2

tioner expressly acknowledged that he was waiving his right to
appeal:

> THE COURT:  It's my understanding that in exchange for
> the opportunity to cooperate in this case and in ex-
> change for the lesser plea that the People allow you to
> take, with the Court's consent today, you have agreed
> to waive your right to appeal the conviction as well as
> the length of any sentence that the Court sets.  Is
> that correct?
>
> THE DEFENDANT:  Yes, sir.
>
> THE COURT:  Normally a defendant can appeal a convic-
> tion and/or a sentence to a higher court, an appellate
> court, and argue that somehow the conviction is im-
> proper or that the sentence is too long.  Here you are
> expressly waiving your right to appeal the conviction,
> including your factual recitation regarding the convic-
> tion, as well as the length of any sentence the Court
> imposes.
>
> When I sentence you under your plea to murder in
> the second degree or if the People allow you to with-
> draw your plea and I sentence you to something less or
> a lesser plea, you are waiving your right to appeal the
> conviction and sentence.  Do you understand that?
>
> THE DEFENDANT:  Yes.

(Sandusky Aff., Ex. 1 at 11).[2]  Petitioner also signed and ac-
knowledged in open court the cooperation agreement and the
written waiver of his right to appeal (Sandusky Aff., Ex. 1 at
11-12).

On July 28, 2004, petitioner was arrested for posses-
sing 34 bags of heroin while he was incarcerated at Rikers Island

---

[2]The plea transcript is incorrectly dated March 12, 2003.

(Sandusky Aff. ¶ 5; Pet. at 5).  Based on that conduct, petition-
er was indicted on August 2, 2004, and charged with multiple
counts of promoting prison contraband, criminal possession of a
controlled substance and unlawful possession of marijuana in
violation of New York Penal Law Sections 205.20(1) & 205.25(2),
220.03 and 221.05, respectively (the "2004 Indictment") (Sandusky
Aff. ¶ 5; Pet. at 5-6).  Because the arrest and the 2004 Indict-
ment constituted a violation of the cooperation agreement,
petitioner lost all the the benefits of that agreement (Sandusky
Aff. ¶ 5).

Subsequent to the 2004 Indictment, petitioner claims
that he met with an Assistant United States Attorney ("AUSA") on
August 20, 2004 and November 9, 2004 about the possibility of
entering a federal cooperation agreement in "an on-going Federal
Case" (Pet. at 8).  Petitioner provides no additional information
regarding this investigation.  According to petitioner, the AUSA
told him that he should not plead to the "drug charges because
they would be part of a Federal Indictment" (Pet. at 8).  Peti-
tioner further claims that the AUSA advised him that he would not
be offered the cooperation agreement if he appealed his state
murder conviction (Pet. at 8).  It is not clear from the petition
or the record whether the "drug charge" to which the AUSA allege-
dly referred was predicated on the same conduct that gave rise to

4

the 2004 Indictment.  Furthermore, petitioner does not provide
any explanation as to why the United States Attorney's Office had
an interest in petitioner's cooperation or the nature of the
"Federal Case."  Petitioner never entered into any federal
cooperation agreement.

On December 10, 2004, petitioner was sentenced to an
indeterminate term of imprisonment of 20 years to life based on
his previously entered guilty plea to murder in the second degree
(Sandusky Aff. ¶ 5, Ex. 2).  At his sentencing, the court again
informed petitioner that he had waived his right to appeal, but
also advised him that he had a right to appeal any issues which
survived that waiver (Sandusky Aff., Ex. 2 at 20:11-20).

Petitioner did not appeal his conviction.  Petitioner
does claim, however, that he instructed his attorney to file an
appeal, but that his attorney failed to follow this instruction
(Pet. at 9).  In a letter dated April 25, 2008, Howard Jaffe,
Esq., petitioner's trial attorney, wrote to petitioner "I don't
remember 'arguing' with you about an appeal since you waived your
right to appeal" (Pet. Ex. 3).  Similarly, in response to peti-
tioner's complaint to the Disciplinary Committee of the First
Department, Mr. Jaffe wrote "In addition to the fact that Mr.
Tarafa waived his right to appeal at his plea of guilty on
12/12/03 before Justice Iacovetta, he never requested or directed

me to file a Notice of Appeal in this matter.  Had he done so, I would have served and filed a Notice of Appeal, despite the fact his plea agreement waived that right" (Pet., Ex. 6).

  The 2004 Indictment was dismissed on February 16, 2006 (Pet., Ex. 3).  Mr. Jaffe wrote to petitioner on this same date informing him of the dismissal (Pet., Ex. 3).

  On or about April 21, 2008, petitioner moved in the Appellate Division, First Department, to appeal as a poor person and for permission to file a late notice of appeal (Sandusky Aff. ¶ 7; Pet., Exs. 7-8).  The Appellate Division denied petitioner's motion on June 17, 2008 (Sandusky Aff. ¶ 7; Pet., Ex. 10).

  Also on June 17, 2008, petitioner filed a motion for an extension of time to take an appeal pursuant to Section 460.30 of New York Criminal Procedure Law based on his trial attorney's purported failure to advise him of his right to appeal his conviction (Sandusky Aff. ¶ 8, Pet. Ex. 11).  The First Department denied this application on November 6, 2008 (Sandusky Aff. ¶ 9, Pet. Ex. 12).  By a letter dated November 25, 2008, petitioner sought leave to appeal the First Department's November 2008 decision with the New York Court of Appeals (Sandusky Aff. ¶ 9, Pet. Ex. 13).  The Court of Appeals denied petitioner's application on January 26, 2009 (Sandusky Aff. ¶ 11, Pet. Ex. 14).

Beginning in approximately February 2009, petitioner filed a series of additional submissions with the Supreme Court and the Appellate Division seeking in forma pauperis relief and the assignment of counsel to file a motion under New York Criminal Procedure Law Article 440 (Sandusky Aff. ¶¶ 12-16).  On August 31, 2009, the Supreme Court denied petitioner's motion (Sandusky Aff. ¶ 17, Ex. 10).  On November 30, 2009 and on January 29, 2010, petitioner submitted additional briefs seeking post-conviction relief (Sandusky Aff. ¶¶ 18-19, Exs. 11-12).  The Supreme Court denied petitioner's motion on February 24, 2010 (Sandusky Aff. ¶ 21; Pet. Ex. 18).  In a letter dated March 1, 2010, petitioner requested to withdraw certain of his pro se filings, and that request was granted on June 1, 2010 (Sandusky Aff. ¶ 26, Ex. 15).

B.  The Petition

Petitioner claims habeas relief is warranted because: (1) the indictment to which he pled guilty was deficient because he is named in only count one of the indictment while the remaining five counts simply refer to "the defendants;" (2) the prosecution failed to disclose material that either impeached petitioner's accusers or exculpated petitioner; (3) petitioner's guilty plea was the result of allegedly coercive advice from

petitioner's attorney and an AUSA; (4) petitioner did not commit any new offenses after his guilty plea and should have received the benefit of his plea agreement and (5) petitioner did not receive the effective assistance of counsel because his attorney failed to follow his purported instruction to take an appeal. Petitioner also claims that he has received inadequate legal assistance from prison law clerks in preparing his habeas petition (Petitioner's Response, dated October 20, 2010, at 13-17).

Respondent contends that the petition should be denied because it is both untimely and procedurally barred.

III.  Analysis

28 U.S.C. § 2244(d)(1), as amended by Section 101 of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Public Law No. 104-132, provides a one-year statute of limitations for habeas petitions:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of --
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed,

8

> if the applicant was prevented from filing by such
> State action;
>
> (C) the date on which the constitutional right asserted
> was initially recognized by the Supreme Court, if the
> right has been newly recognized by the Supreme Court
> and made retroactively applicable to cases on collat-
> eral review; or
>
> (D) the date on which the factual predicate of the
> claim or claims presented could have been discovered
> through the exercise of due diligence.

The AEDPA's limitations period ordinarily commences when a con-

viction becomes final.  28 U.S.C. § 2244(d)(1)(A).  A conviction

becomes final upon the completion of direct appellate review in

state court and by the United States Supreme Court, either when

certiorari proceedings are completed or when the time for seeking

further direct review expires.  McKinney v. Artuz, 326 F.3d 87,

96 (2d Cir. 2003); Williams v. Artuz, 237 F.3d 147, 150 (2d Cir.

2001).  In New York, a defendant must take an appeal within 30

days of the imposition of sentence.  N.Y. Crim. Proc. L. §

460.10(1)(a).

The one-year limitations period is tolled for "[t]he

time during which a properly filed application for State

post-conviction or other collateral review with respect to the

pertinent judgment or claim is pending. . . ."  28 U.S.C. §

2244(d)(2).  The effect of this statutory toll is to "exclude

[the] time during which properly filed state relief applications

are pending [; it] does not reset the date from which the one-year statute of limitations begins to run." Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam); accord Felton v. Mazzuca, 98 Civ. 4567 (KMW)(RLE), 2002 WL 655207 at *2 (S.D.N.Y. Apr. 18, 2002) (Ellis, M.J.) (Report & Recommendation).

Petitioner was sentenced on December 10, 2004.  Because he did not seek an appeal, his conviction became final 30 days after his sentence on January 10, 2005.[3]  See Bethea v. Girdich, 293 F.3d 577, 578 (2d Cir. 2003); accord Santos v. Payant, 538 F. Supp. 2d 549, 554 (E.D.N.Y. 2007); Cardona v. Andrews, 04 Civ. 6534 (RCC), 2005 WL 2649026 at *2 (S.D.N.Y. Oct. 14, 2005) (Casey, D.J.).  Thus, in order to comply with the AEDPA's one-year limitations period, petitioner had to file his petition no later than January 10, 2006.

A pro se habeas petition is deemed filed on the date the inmate delivers the petition to prison authorities for mailing.  See Rule 3(d) of the Rules Governing Section 2254 Cases in the United States District Courts; Noble v. Kelly, 246 F.3d 93, 97-98 (2d Cir. 2001) (the prison "mailbox" rule extends to habeas petitions).  Accordingly, the earliest date that Tarafa's petition could be deemed filed is March 29, 2010 -- the date that he

_____

[3]January 9, 2005, the thirtieth day after the imposition of sentence, was a Sunday.

signed the "Affirmation of Service" appended to his petition and presumably gave the petition to prison officials to be mailed (Pet. at 24). See Hardy v. Conway, 162 F. App'x 61, 62 (2d Cir. 2006) (summary order) (noting with approval that "district court in this circuit have tended to assume that prisoners' papers were given to prison officials on the date of their signing"). Thus, the petition is time barred by over four years, unless the limitations period is tolled.

The statutory toll in Section 2244(d)(2) is inapplicable. Although petitioner sought post-conviction relief in state court beginning in 2009, he did not seek any post-conviction relief until after the limitations period had expired. These applications "do[] not reset the date from which the one-year statute of limitations begins to run." Smith v. McGinnis, supra, 208 F.3d at 17; accord Lawrence v. Greene, 06 Civ. 202 (DLI), 2011 WL 1327128 at *3 (E.D.N.Y. Mar. 31, 2011); Gordon v. Cunningham, 05 Civ. 2540 (WHP)(HBP), 2008 WL 5099950 at *3 (S.D.N.Y. Dec. 2, 2008) (Pauley, D.J.) (adopting Report & Recommendation of Pitman, M.J.). Thus, because petitioner did not seek state post-conviction relief until well after the one-year limitation in the AEDPA had expired, this statutory toll does save his petition.

Although petitioner has not raised it, I shall consider mea sponte the applicability of the doctrine of equitable tolling given petitioner's pro se status.  The AEDPA's one-year limitations period is subject to the doctrine of equitable tolling. Holland v. Florida, 130 S.Ct. 2549, 2560 (2010); Jenkins v. Greene, 630 F.3d 298, 302 (2d Cir. 2010); Valverde v. Stinson, 224 F.3d 129, 133 (2d Cir. 2000); Smith v. McGinnis, supra, 208 F.3d at 17; see also Warren v. Garvin, 219 F.3d 111, 113 (2d Cir. 2000) ("Equitable tolling is a doctrine that permits courts to extend a statute of limitations on a case-by-case basis to prevent inequity" and "is available when 'extraordinary circumstances' prevent a prisoner from filing a timely habeas petition.").

As explained by the Second Circuit, in order to invoke the doctrine of equitable tolling, petitioner must demonstrate: (1) that "extraordinary circumstances prevented him from filing his petition on time" and (2) "a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." Valverde v. Stinson, supra, 224 F.3d at 133-34 (inner quotations and citations omitted); accord Holland v.

12

Florida, supra, 130 S.Ct. at 2562 ("[A] petitioner is entitled to
equitable tolling only if he shows (1) that he has been pursuing
his rights diligently, and (2) that some extraordinary circum-
stance stood in his way and prevented timely filing." (inner
quotation marks omitted)); Pace v. DiGuglielmo, 544 U.S. 408, 418
(2005) ("Generally, a litigant seeking equitable tolling bears
the burden of establishing two elements:  (1) that he has been
pursuing his rights diligently, and (2) that some extraordinary
circumstance stood in his way."); Walker v. Jastremski, 430 F.3d
560, 564 (2d Cir. 2005) (equitable tolling may be applied when
"'extraordinary circumstances' prevented a party from timely
performing a required act, and that the party 'acted with reason-
able diligence throughout the period he [sought] to toll,'"
quoting Doe v. Menifee, 391 F.3d 147, 159 (2d Cir. 2004)); Torres
v. Barnhart, 417 F.3d 276, 279 (2d Cir. 2005).

          For purposes of equitable tolling, the circumstance
that gives rise to the toll need not be unusual or unique to be
"extraordinary."  "The term 'extraordinary' does not refer to the
uniqueness of petitioner's circumstances, 'but rather how severe
an obstacle it is for the prisoner endeavoring to comply with
AEDPA's limitations period.'" Bolarinwa v. Williams, 593 F.3d
226, 231-32 (2d Cir. 2010), quoting Diaz v. Kelly, 515 F.3d 149,
154 (2d Cir. 2008); accord Sumpter v. Sears, 09 Civ. 689 (KAM),

2011 WL 31188 at *3 (E.D.N.Y. Jan. 5, 2011); Herring v. Superin-
tendent, 09 Civ. 7610 (BSJ)(JCF), 2010 WL 5463869 at *4 (S.D.N.Y.
Dec. 2, 2010) (Report & Recommendation) (Francis, M.J.), adopted,
2010 WL 5396081 (S.D.N.Y. Dec. 29, 2010) (Jones, D.J.).  The
party asserting an equitable toll bears the burden of establish-
ing that such a toll is appropriate.  Pace v. DiGuglielmo, supra,
544 U.S. at 418; Rios v. Mazzuca, supra, 78 F. App'x 742, 745 (2d
Cir. 2003); Victorial v. Burge, 477 F. Supp. 2d 652, 654
(S.D.N.Y. 2007) (Marrero, D.J.); Evans v. Senkowski, 105 F. Supp.
2d 97, 100 (E.D.N.Y. 2000).

        Petitioner claims that his petition is timely and that
he "has, despite his struggling with the English language, dili-
gently sought his First Direct Appeal to the State Appeals court,
with the aid of inmate law clerks, through every conceivable
channel; and has consistently been rebuked for his efforts" (Pet.
at 14).

        However, the record does not disclose any extraordinary
circumstances that prevented petitioner from filing the petition
before the expiration of the AEDPA limitations period.  Peti-
tioner's claim that his trial counsel failed to follow his pur-
ported instruction to file an appeal does not constitute an
extraordinary circumstance.  Although there may be instances
where an attorney's abandonment of a client constitutes an ex-

traordinary circumstance, this is not such a case.  See Morton v.
Ercole, 08 Civ. 252 (RJS)(FM), 2010 WL 890036 at *4 (S.D.N.Y.
Mar. 10, 2010) (Sullivan, D.J.), quoting Seitzinger v. Reading
Hosp. & Med. Ctr., 165 F.3d 236, 237-38 (3d Cir. 1999) ("An
'extraordinary circumstance' may suffice for equitable tolling
purposes if there is a 'sufficient claim of attorney abandonment'
where 'a diligent client persistently questioned the lawyer as to
whether he had filed the complaint in time, and he affirmatively
represented to her that he had.").  As an initial matter, aside
from petitioner's self-serving statements, there is no evidence
in the record that suggests that petitioner, in fact, instructed
his trial attorney to file an appeal and that his attorney failed
to follow that instruction.  Indeed, given petitioner's express
waiver of his right to appeal and the correspondence in the
record from petitioner's trial attorney stating that petitioner
never requested that he file an appeal, there is little, if any,
reason to credit petitioner's conclusory and uncorroborated
assertions.  See Brown v. United States, 637 F. Supp. 2d 212,
223-24 (S.D.N.Y. 2009) (Peck, M.J.); Garcia v. United States, 01
Cr. 945, 04 Civ. 6020 (RMB)(GWG), 2008 WL 683661 at *5-6
(S.D.N.Y. Mar. 14, 2008) (Gorenstein, M.J.) (Report & Recommenda-
tion), adopted, 2008 WL 2446840 (S.D.N.Y. June 17, 2008) (Berman,
D.J.).  Moreover, even assuming that petitioner's attorney failed

to follow petitioner's alleged instruction to file an appeal, there is no causal connection between this failure and the untimely petition.  An attorney's failure to file a promised appeal is distinct from an attorney's failure to file a promised habeas petition, and does not an constitute exceptional circumstance. As the Court of Appeals for the Second Circuit has held, this latter failure can constitute an exceptional circumstance because a petitioner's reliance on that promise and the attorney's breach of that promise directly leads to the untimely filing.  See Dillon v. Conway, 642 F.3d 358, 363 (2d Cir. 2011) (extraordinary circumstance found where the petitioner's counsel affirmatively and knowingly misled petitioner that he would file the habeas petition before the filing deadline); Baldayaque v. United States, 338 F.3d 145, 152 (2d Cir. 2003) (extraordinary circumstance existed where attorney failed to file habeas petition despite specific instructions from petitioner).  In contrast, petitioner's attorney's alleged failure to file a promised appeal did not necessarily foreclose petitioner's own efforts at filing a habeas petition nor did it cause that petition to be untimely. Accordingly, there are no exceptional circumstances here.

        However, even assuming, arguendo, that extraordinary circumstances were present, petitioner is unable to demonstrate that he was pursuing his rights with reasonable diligence.  It

16

was not until April 2008 -- over two years after the AEDPA limi-
tations period expired and over three years from the date that
petitioner's conviction became final -- that petitioner took any
action with respect to his conviction.  This lengthy period of
inaction is the antithesis of reasonable diligence and is fatal
to any possibility of an equitable toll.  See, e.g., Celaj v.
Artuz, 49 F. App'x 331, 333 (2d Cir. 2002) (summary order) (no
reasonable diligence where petitioner waited four years before
filing habeas petition); Warren v. Garvin, 219 F.3d 111, 113-14
(2d Cir. 2000) (petitioner did not act with reasonable diligence
when he waited one year and eight months between dismissal of
first petition and filing of second petition); Morton v. Ercole,
supra, 2010 WL 890036 at *2 ("Courts generally have found that
periods of delay lasting for more than a year do not exhibit due
diligence" (citing cases)); Lewis v. Walsh, 03 Civ. 1932 (DC),
2003 WL 21729840 at *3 (S.D.N.Y. July 25, 2003) (Chin, then D.J.,
now Cir. J.) (five year delay with sporadic letters to request
documents was not reasonable diligence); Tineo v. United States,
01 Civ. 4511 (HB), 97 Cr. 313 (HB), 2002 WL 1997901 at *2
(S.D.N.Y. Aug. 29, 2002) (Baer, D.J.) (duly diligent person would
not have needed more than three years to discover that his attor-
ney had failed to file a direct appeal); see also Lopez v. Lee,
11 Civ. 2706 (JG), 2011 WL 6068119 at *6 (E.D.N.Y. Dec. 7, 2011)

("As year after year passed by, Lopez should not have simply sat by hoping that his attorneys would seek federal habeas relief on his behalf.  He should have eventually determined that he could not rely on them and promptly found a new attorney or, if he could not afford one, prepared a habeas petition pro se."); Francis v. Miller, 198 F. Supp. 2d 232, 235 (E.D.N.Y. 2002) ("The mere fact that counsel declined to continue to represent peti- tioner does not justify petitioner's inaction for almost three years").  Accordingly, equitable tolling is not warranted.

Petitioner's claim that an AUSA purportedly advised him to not appeal his murder conviction during negotiations for a federal cooperation agreement does not save his petition.  Assum- ing this advice was actually given to petitioner, it does not explain why he failed to file his habeas corpus petition in a timely manner.  Moreover, even if I were to assume that February 16, 2006 -- the date the 2004 Indictment was dismissed and the date that any negotiations with an AUSA over his pending 2004 Indictment would have ceased to be an impediment to an appeal[4] -- was the proper triggering date for the AEDPA's limitations pe-

_____

[4]I assume that the purported negotiations with the AUSA in 2004 related to the 2004 Indictment.  I note, however, that neither the record nor the petition makes clear to what the alleged negotiations between petitioner and the United States Attorney related.

18

riod, there is still no basis for equitable tolling.  Petitioner did not take any action from February 2006 to April 2008, and thus did not act with reasonable diligence.

Petitioner's claim of inadequate assistance from inmate law clerks is not a basis for an equitable toll because there is no right to counsel or other legal assistance in connection with a federal habeas corpus petition.  See McCleskey v. Zant, 499 U.S. 467, 495 (1991); Silvestre v. United States, 55 F. Supp. 2d 266, 268 (S.D.N.Y. 1999) (Sprizzo, D.J.).

Finally, although under extremely narrow circumstances, a habeas petitioner can avoid the bar of the AEDPA's limitations period by making a showing of actual innocence, Rivas v. Fischer, 687 F.3d 514 (2d Cir. 2012), petitioner has made no such showing here.

In light of my conclusion that the petition is time-barred, I shall not address whether the petition is procedurally barred.

IV.  Conclusion

Accordingly, for all the foregoing reasons, I respect-fully recommend that respondent's motion be granted and that the petition be dismissed as time-barred.

19

V.   Objections

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections.  See also Fed.R.Civ.P. 6(a).  Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Alison J. Nathan, United States District Judge, 40 Foley Square, Room 2102, New York, New York 10007, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Nathan.  FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW.  Thomas v. Arn, 474 U.S. 140, 155 (1985); United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.

1992); <u>Wesolek v. Canadair Ltd.</u>, 838 F.2d 55, 57-59 (2d Cir.

1988); <u>McCarthy v. Manson</u>, 714 F.2d 234, 237-238 (2d Cir. 1983).

Dated:  New York, New York
        March 11, 2013

                              Respectfully submitted,


                              _____
                              HENRY PITMAN
                              United States Magistrate Judge

Copies mailed to:

Mr. Eddie Tarafa
DIN 08-A-0632
Shawangunk Correctional Facility
200 Quick Road
P.O. Box 700
Wallkill, New York  12589

Stanley R. Kaplan
Assistant District Attorney
Bronx County
215 East 161st Street
Bronx, New York  10451