USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: JUL 18 2013

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

EDDIE TARAFA,

                Plaintiff,

    -against-

DALE ARTUS,

                Defendant.

------------------------------------------------------------X

MEMORANDUM AND ORDER

10 Civ. 3870 (AJN) (HBP)

ALISON J. NATHAN, District Judge:

In March 2010, Petitioner filed a *pro se* petition for habeas relief pursuant to 28 U.S.C. § 2254 ("the Petition"). (Dkt. No. 2) On March 11, 2013, Magistrate Judge Pitman issued a Report and Recommendation ("R&R") recommending that the Petition be dismissed as untimely. (Dkt. No. 40) On April 11, 2013, Petitioner filed objections to the R&R on the grounds that Judge Pitman improperly declined to equitably toll the statute of limitations for habeas petitions. (Dkt. No. 44) For the reasons set forth below, the Court **ADOPTS** the R&R, but supplements Judge Pitman's findings to address a possible alternative argument by Petitioner.

I.    BACKGROUND

On December 12, 2003, Petitioner pled guilty to one count of murder in the second degree in violation of New York Penal Law § 125.25 pursuant to a cooperation agreement with the Bronx County District Attorney's Office. (Opp. Aff. ¶ 4; Pet. at 5) The cooperation agreement was conditioned on Petitioner "commit[ing] no further crimes whatsoever" and required that Petitioner waive his right to appeal the murder conviction. (Pet. Ex. 1) The cooperation agreement further provided that if Petitioner's cooperation was deemed satisfactory,

1

he would be given the opportunity to withdraw his guilty plea and instead plead guilty to manslaughter in either the first or second degree, as determined by the People. (Pet. Ex. 1)

On July 28, 2004, while awaiting sentencing on the murder charge, Petitioner was arrested for possessing drugs in his cell at Rikers Island. (Pet. at 5) On August 2, 2004, Petitioner was indicted on a variety of charges stemming from this arrest. (Pet. at 5-6)

On December 10, 2004, Petitioner was sentenced on the murder charge. (Opp. Aff. ¶ 5) Having concluded that the drug indictment violated the terms of Petitioner's cooperation agreement, the state court sentenced Petitioner to an indeterminate term of incarceration of 20 years to life. (*Id.*)

Petitioner alleges that he immediately asked his attorney to file an appeal of the murder conviction notwithstanding the appeal waiver contained in the cooperation agreement. (Pet. at 6) However, there is no indication in the record of the sentencing proceeding that such a request was made. (Opp. Aff. Ex. 2) Furthermore, Petitioner's attorney explicitly stated in a letter to Petitioner dated April 25, 2008, that he did not remember "arguing with [Petitioner] about an appeal since Petitioner waived [his] right to appeal." (Pet. Ex. 3) Finally, Petitioner's claimed request to his attorney seems unlikely in light of his allegation that approximately one month before sentencing, he was told by an assistant U.S. Attorney, Helen Cantwell, that a federal cooperation agreement might be available if he did not appeal his murder conviction. (Pet. at 8) However, because the Petition is untimely regardless of whether or not Petitioner actually made this request, the Court need not resolve this factual dispute and assumes that Petitioner did in fact request that his attorney file an appeal.

Over three years after his sentencing, Petitioner began to file a variety of motions in state court. On April 25, 2008, Petitioner filed a Notice of Motion to Proceed as a Poor Person Upon

Appeal ("First Appeal Motion") with the Appellate Division, First Department. (Pet. Ex. 7) The First Department construed this as a motion for an extension of time to take an appeal under N.Y.C.P.L. § 460.30 and denied the motion on June 17, 2008. (Pet. Ex. 10)

On the same date, Petitioner submitted a Notice of Motion for Extension of Time to Appeal Pursuant to N.Y.C.P.L. § 460.30 ("Second Appeal Motion") to the First Department. (Opp. Aff. ¶ 8; Pet. at 10) This motion was denied on November 6, 2008. (Pet. Ex. 12) Petitioner attempted to appeal this November 6th decision, but was denied a certificate of appeal by the New York Court of Appeals on the grounds that the decision was not appealable under N.Y.C.P.L. 450.90(1). (Pet. Ex. 13, 14(b))

Between March 16, 2009, and May 19, 2009, Petitioner submitted two *pro se* motions to the Bronx County Supreme Court requesting "assignment of counsel to file a C.P.L. § 440 motion." (Opp. Aff. Exs. 6, 8) On August 31, 2009, these motions were denied by the Bronx County Supreme Court. (Opp. Aff. Ex. 10)

On November 30, 2009, Petitioner submitted a Notice of Motion to Vacate Judgment Under C.P.L. § 440.10 and for Permission to Proceed as a Poor Person ("§ 440 Motion") to the Bronx County Supreme Court. (Opp. Aff. Ex. 11; Pet. Ex. 16) Finally, on January 29, 2010, Petitioner submitted a brief to supplement the § 440 Motion. On February 24, 2010, the § 440 Motion was denied. (Pet. Ex. 18)

Petitioner filed the instant habeas petition on March 29, 2010.[1]

## II. STANDARD OF REVIEW

When a magistrate judge issues findings or recommendations, the district court "may accept, reject, or modify [them] in whole or in part." 28 U.S.C. § 636(b)(1). The court reviews

---

[1] The Affirmation of Service appended to the Petition is dated March 29, 2010, presumably the date that Petitioner gave the Petition to prison officials to be mailed. A *pro se* habeas petition is deemed filed on the date that the inmate delivers the petition to prison authorities for mailing. *See Noble v. Kelly*, 246 F.3d 93, 97-98 (2d Cir. 2001).

3

*de novo* any portions of a magistrate judge's report and recommendation to which a party has stated a timely objection. *Id.* As to those portions that neither party objects to, the court may review for clear error. *See Gomez v. Brown*, 655 F. Supp. 2d 332, 341 (S.D.N.Y. 2009). However, "new arguments and factual assertions cannot properly be raised for the first time in objections to the R&R, and indeed may not be deemed objections at all." *Smith v. Hulihan*, 2012 WL 4928904, at *1 (S.D.N.Y. Oct. 17, 2012) (citing *Forman v. Artuz*, 211 F. Supp. 2d 415, 418 n. 8 (S.D.N.Y. 2000)).

## III. DISCUSSION

Pursuant to 28 U.S.C. § 2244(d)(1) "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." There are, however, a number of dates from which the limitations period can run, each of which is detailed in the subsections of § 2244(d)(1). Of relevance here are § 2244(d)(1)(A), which provides that the limitation period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," and § 2244(d)(1)(D), which provides that the limitation period runs from the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Each of these subsections of § 2244(d)(1) is important because the Petition can be read either as challenging various elements of Petitioner's conviction or as raising an ineffective assistance of counsel claim based on the alleged failure of Petitioner's counsel to file the requested appeal. Under the first reading, the limitations period should be calculated using § 2244(d)(1)(A). Under the second reading, the limitations period should be calculated using §

2244(d)(1)(D). As detailed below, the Petition is untimely under either reading and, as a result, must be dismissed.

### A. If The Petition Challenges Elements of Petitioner's Conviction

Judge Pitman read the petition as challenging various aspects of Petitioner's conviction and determined that the Petition was untimely under §2244(d)(1)(A) – a conclusion to which Petitioner does not object.

However, Judge Pitman also considered, *sua sponte*, whether there was a basis for applying equitable tolling. (R&R at 12) He concluded that there was not. (R&R at 12-19) It is this conclusion to which Petitioner objects.

The doctrine of equitable tolling permits courts to extend the statute of limitations for habeas petitions in light of "extraordinary circumstances" which prevent a petitioner from filing a timely petition. *Warren v. Garvin*, 219 F.3d 111, 113 (2d Cir. 2000). To invoke the doctrine of equitable tolling, a petitioner must demonstrate: (1) that "extraordinary circumstances prevented him from filing his petition on time" and (2) "a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made, if petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." *Valverde v. Stinson*, 224 F.3d 129, 133-34 (2d Cir. 2000).

In his objections, Petitioner points to two circumstances as supporting equitable tolling: (1) Petitioner's conversations with AUSA Cantwell during which Petitioner was allegedly informed that if he wished to pursue a cooperation agreement with the federal government, he could not challenge his murder conviction and (2) the failure of defense counsel to file an appeal

5

in January 2005, despite Petitioner's alleged request to do so. As explained below, neither of these alleged circumstances entitles Petitioner to equitable tolling.

### 1. Alleged Meetings with AUSA Cantwell

In his objections, Petitioner appears to argue that he was unable to file an appeal or a habeas petition based on his conversations with AUSA Cantwell, which occurred from June 2004 to November 2004. During these conversations, AUSA Cantwell allegedly told Petitioner that he could not withdraw his plea to the state murder charge or challenge his conviction on appeal if he wanted a cooperation agreement with the federal government. Even if the Court assumes that these conversations occurred and even if the Court accepts that those conversations served as an impediment to the filing of an appeal or a habeas petition, Petitioner again admits in his objections that as of January 2005, he directed his attorney to file an appeal. This undermines any argument that Petitioner's alleged conversations with AUSA Cantwell impeded him from seeking habeas relief after January 2005. Accordingly, the Court agrees with Judge Pitman that Petitioner's alleged conversations with AUSA Cantwell do not constitute an extraordinary circumstance that prevented him from timely filing his petition.

### 2. Attorney's Alleged Failure to File An Appeal

The Court next considers Petitioner's contention that his attorney's failure to file the requested appeal warrants equitable tolling. As Judge Pitman concluded, the failure of counsel to file an appeal does not prevent a petitioner from pursuing habeas relief. (R&R at 15-16) *See also Raynor v. Dufrain*, 28 F. Supp. 2d 896, 900 (S.D.N.Y. 1998). As a result, the Court agrees that the alleged failure to file a requested appeal does not warrant equitable tolling.

* * *

In light of the forgoing, the Court adopts Judge Pitman's report and recommendation finding that the Petition, if read as challenging Petitioner's murder conviction, was untimely.

## B. If the Petition Raises An Ineffective Assistance of Counsel Claim

As previously indicated, the Petition can also be read as raising an ineffective assistance of counsel claim based on Petitioner's attorney's failure to file the appeal allegedly requested by Petitioner following his December 10, 2004 sentencing. (Pet. at 9, 16, 21) Because pursuant to 28 U.S.C. § 2244(d)(1)(D) the limitations period would not commence until the date that Petitioner could have discovered the factual predicate of this claim through the exercise of due diligence, the Court must calculate the limitations period from the date that Petitioner could have discovered that the allegedly requested appeal had not been filed. *See Rodriguez v. New York*, 2004 U.S. Dist. LEXIS 30158, at *5 (S.D.N.Y. Sept. 7, 2004) ("The AEDPA one-year statute of limitations did not begin to run until petitioner would have discovered, through the exercise of due diligence, that no notice of appeal had been filed.") (citing *Wims v. United States*, 225 F.3d 186, 190 (2d Cir. 2000)). Here, Petitioner filed his First Appeal Motion on April 25, 2008. It is reasonable to assume that as of that date, he was aware that his attorney had not filed the requested appeal.[2] Thus, absent statutory tolling – which the Court discusses below – the limitations period ended on April 25, 2009, approximately eleven months before Petitioner commenced this action.

However, pursuant to 28 U.S.C. § 2244(d)(2), the limitations period is tolled for the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment is pending." The next question then is whether any

---

[2] Notably, this was three years and five months after Petitioner was sentenced on the murder charge – a period of time perhaps suggesting a lack of diligence. Of course, if the Court were to find that through the exercise of due diligence, Petitioner would have made this discovery at an earlier date, the Court could start the limitations period from that earlier date. *Wims*, 225 F.3d at 189. The Court need not reach this issue, however, because the Petition is untimely even if the Court starts the limitations period on April 25, 2008.

7

of the motions filed by Petitioner in state court trigger this statutory toll and, if so, whether they toll sufficient time to render the Petition timely. As explained below, although some of Petitioner's motions do trigger the statutory toll, they do not save the Petition.

Under the plain language of the statute, the statutory toll provided by § 2244(d)(2) is only applicable to motions that directly attack a conviction. *Santiago v. Miller*, 180 F. Supp. 2d 471, 474 (S.D.N.Y. 2001). Thus, motions for assignment of counsel to assist in pursuing collateral review or requests for potentially exculpatory documents do not toll the statute of limitations. *See Hodge v. Greiner*, 269 F.3d 104, 107 (2d Cir. 2001); *Santiago*, F. Supp. 2d at 474.

Furthermore, to merit a statutory toll, an application for post-conviction or collateral review must be properly filed. 28 U.S.C. § 2244(d)(2); *Bennett v. Artuz*, 199 F.3d 116, 121 (2d Cir. 1999), *aff'd Artuz v. Bennet*, 531 U.S. 4 (2000). An application is properly filed when it is "submitted according to the state's procedural requirements, such as the rules governing notice and the time and place of filing." *Bennet*, 199 F.3d at 121.

Once a statutory toll is imposed, it continues through the pendency of the application. *Id* at 120. An application is deemed pending "from the time it is first filed until finally disposed of and further appellate review is unavailable under the particular state's procedures." *Id*.

Petitioner's first application cognizable as a properly filed application for state post-conviction or other collateral review is his First Appeal Motion, filed April 25, 2008. This motion was denied on June 17, 2008. That same day, Petitioner filed his Second Appeal Motion, which was denied on November 6, 2008. Neither of these decisions were appealable to the New York Court of Appeals and therefore Petitioner's applications ceased to be pending as soon as they were denied. *See Hizbullahankhamon v. Walker*, 255 F.3d 65, 70 (2d Cir. 2001). The statute of limitations was therefore tolled between April 25, 2008 and November 6, 2008.

The motions filed by Petitioner between March 2009 and May 2009 seeking appointment of counsel do not toll the statute of limitations because they were not motions for post-conviction relief or collateral review. *Santiago*, F. Supp. 2d at 474. In his objections to the R&R, Petitioner attempts to restyle at least one of these motions as a motion for post-conviction relief under C.P.L § 440. (Pet.'s Obj. at 2) However, the record clearly indicates that these were motions for assignment of counsel. (Opp. Aff. Exs. 6, 8) Thus, the limitations period continued to run from November 6, 2008 until Petitioner's next properly-filed application for post-conviction or other collateral review.

The next properly filed motion that could have triggered the statutory toll is Petitioner's § 440 Motion submitted to the Bronx County Supreme Court on November 30, 2009. However, one year and twenty-four days had already passed between November 6, 2008, when Petitioner's First and Second Appeal Motions were denied, and November 30, 2009, when Petitioner's § 440 Motion was filed. Thus, by the time that Petitioner filed his § 440 Motion, the one year limitations period had already expired. The § 440 Motion therefore has no impact on the calculation of the limitations period.

In sum, even if the limitations period is tolled from April 25, 2008 to November 6, 2008 pursuant to § 2244(d)(2), it expired one year later on November 6, 2009, rendering the Petition, filed March 29, 2010, untimely.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's objections to the R&R are overruled, and the Petition is dismissed as untimely. The Clerk of the Court is directed to terminate this action.

SO ORDERED.

Dated: July 18, 2013
New York, New York

_____
ALISON J. NATHAN
United States District Judge